**Bobby HENLEY, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Sept. 11, 1972.

Certiorari Denied by Supreme Court
Dec. 4, 1972.

Donald Arkovitz, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., W. Henry Haile, Asst. Atty. Gen., Robert H. Schwartz, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

## OPINION

OLIVER, Judge.

Convicted in the Criminal Court of Davidson County of incest with his 15-year-old daughter and sentenced to imprisonment in the State Penitentiary for five years, the minimum provided by the statute proscribing that offense (TCA § 39–705), the defendant Bobby Henley is now before this Court upon appeal in the nature of a writ of error duly perfected.

Essentially, the defendant's Assignments of Error challenge the sufficiency of the evidence to warrant and sustain the verdict of the jury, his position being that his daughter Barbara, whom the indictment charges him with violating, was an accomplice as a matter of law and that there is no competent evidence in the record to corroborate her testimony.

■ The essence of the offense of incest is marriage or sexual intercourse with a relative within the prohibited degree of consanguinity. Murray v. State, 214 Tenn. 51, 377 S.W.2d 918.

Admitting that there is "little or no" evidence in this record to corroborate Barbara's testimony, the State submits the case without recommendation. We summarize the material evidence. Barbara testified her father had forced her to have sexual relations with him approximately once a week for the last three years prior to December 5, 1970; that she told her sisters (Theresa and Dorothy Enola) and stepmother about this, but her step-mother only said that she "couldn't do nothing with him"; that the defendant beat and whipped her into submission and she did not report the matter otherwise because she was afraid of him; that on December 5, 1970, while her grandfather and stepmother and brothers and sisters were in the front room of their home, the defendant told her to go to her bedroom and followed her there and told her to remove her clothes and beat her with his fists and removed her clothing when she resisted and then proceeded to have intercourse with her, and notwithstanding her screams ("Not too loud") no one came to her aid; that after this last incident she discussed the matter with her sisters and Theresa advised her to report it to someone at the school she attended; and that on December 7th she related the incident to the assistant high school principal and later talked to a male and a female officer of the Metropolitan Police Department who interviewed her at the school; that she had seen her father having sexual relations with her sister Dorothy; she admitted to having been to juvenile court because of truancy and running away from home and related an incident when her father found her wrapped in a blanket in the apartment of her boy friend Tommy, but denied she was undressed at the time and denied having intercourse with Tommy; she admitted that at the time of this latter occurrence her father was looking for her because she had stayed out of school, and that when he found her, he slapped her and took her home and forced her to eat in the kitchen while the other members of the family ate in the dining room, and that he called her names; and that it was shortly after he found her wrapped in a blanket in the apartment that she and Theresa and their

other sister talked about their father's misconduct and she then went to the high school and made her disclosures to the assistant principal; she admitted to intercourse with only one boy, and said that this was after the December 5th incident with her father. After the defendant was arrested and placed in jail Barbara wrote him a letter (admitted in evidence) in which she said, among other things:

"Dad I know you hate in that place but they will not think I was tell the truth if I tole them that it was a lie. Because if I tell them what Enola and Teresa say they will make me to a lie test and I will be telling and lie and they will send me far away and I do not want to be sent far away the kids and you and mom.

"Dad Mother think that I do not like her. Because I do not write her but that is not so. Because I do not know where to send the letter to her. She writes Enol and Jo once a week sometime but she doesn't write me. Why is that? I think that she doesn't love me and so what am I going to do about it. Dad I know you love me and you think that I do not love you."

Confronted with this letter she testified she wrote to her father because he had written to her, and that she loved him, but maintained she was telling the truth. She refused to testify who told her that she would be taken away.

The assistant principal and the two officers testified what Barbara related to them.

Theresa testified that she did not hear Barbara scream on the date of the alleged offense; that Barbara had not told her about their father forcing her to have sexual relations, but admitted that she had been having sexual relations with him herself since she was 12 years old; that the incest incident alleged was a scheme devised by her and Barbara and their other sister in order to get rid of their stepmother whom they disliked, but admitted she did not know how the scheme would

have that effect because "it was all mixed up, and it was planned so quickly"; she denied engaging in sex parties but admitted having five or six boys in the home in the absence of her father and having sexual relations with them while her sisters maintained a lookout for their father, and he spanked her when he discovered what was going on.

The defendant denied whipping his daughters, testifying that he had not done so since they were small children, that Barbara gave him difficulty and ran away from home frequently and refused to go to school; that he found her on one occasion undressed in her boy friend's apartment; that upon returning home from work he had found his daughters having sex parties with 15 to 20 boys. He denied that he had ever had intercourse with any of his daughters, and testified that they had threatened to make these charges against him so that he would be sent back to prison (having previously served a burglary sentence during which his first wife died); that he was strict on his daughters because of their behavior and refused to let them watch television or listen to the radio and made them eat separately from the rest of the family.

If the defendant carried on a prolonged incestuous relationship with Barbara and if she engaged in it voluntarily without any force or threats or intimidation by or fear of the defendant, she was an accomplice and her virtually unsupported testimony would be insufficient to sustain this conviction.

■ The rule in this State requiring corroboration of the testimony of an accomplice has been applied in sex cases even where the accomplice was a child. Sherrill v. State, 204 Tenn. 427, 321 S.W. 2d 811; Scott v. State, 207 Tenn. 151, 338 S.W.2d 581; Boulton v. State, 214 Tenn. 94, 377 S.W.2d 936. In *Sherrill*, supra, two boys, 10 and 11 years of age who participated in the crime of fellatio with the defendant were held to be accomplices. In

*Scott*, supra, a girl who began engaging in incestuous relationships with her step-father, the defendant, when about 12¼ years of age and continued until she became pregnant about three years later was an accomplice. In *Boulton*, supra, the Court considered a 14-year-old boy who engaged in fellatio with the defendant as being an accomplice. In *Scott*, supra, the Court said:

"It is a well-settled rule in this state that a defendant cannot be convicted upon the uncorroborated testimony of an accomplice in his crime; and this is true in sex cases even where the accomplice is a child of such tender years as to be incapable of consenting to such crime. Sherrill v. State, 204 Tenn. 427 321 S. W.2d 811, 814–816.

"If the female consents to the crime of incest, she is an accomplice, and a conviction cannot be had upon her unsupported testimony. But, of course, if she did not voluntarily consent, as in the case of rape, force, threats, fraud or undue influence, she is not an accomplice. Shelly v. State, 95 Tenn. 152, 155, 31 S. W. 492, 493, 49 Am.St.Rep. 926."

In the *Shelly* case, cited in the above quotation from *Scott*, the Court said this:

" 'If the witness knowingly, voluntarily, and with the same intent which actuated the defendant, united with him in the commission of the crime charged against him, she was an accomplice, and her uncorroborated testimony cannot support the conviction. But if, in the commission of the incestuous act, she was the victim of force, threats, fraud, or undue influence, so that she did not act voluntarily, and did not join in the commission of the act with the same intent that actuated the defendant, then she would not be an accomplice, and a conviction would stand, even upon her uncorroborated testimony.' Wharton's Cr.Ev., Sec. 440; Freeman v. The State, 11 Tex.App. 92. There is no evidence in this record of any force, threats, fraud,

or undue influence practiced by the defendant in accomplishing the incestuous act."

The Supreme Court of this State has addressed itself many times to the question of the character and quality and quantum of evidence necessary to constitute legally sufficient corroboration of an accomplice. The rule, simply stated, is that there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460; Boulton v. State, supra. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. Sherrill v. State, supra.

Also see: Britt v. State, 1 Tenn.Cr.App. 768, 450 S.W.2d 48, Davis v. State, 1 Tenn.Cr.App. 345, 442 S.W.2d 283 and Scola v. State, Tenn.Cr.App., 474 S.W.2d 144.

Upon this record, we think the conclusion is inescapable that Barbara was a willing participant in the incestuous relationship with her father, if any such occurred in fact, and that she was an accomplice. Although she testified she told her step-mother and sisters, Theresa and Enola, her step-mother and Enola did not testify (perhaps because their testimony would have been hearsay), and Theresa denied that Barbara told her of the relationship. Except for Barbara's testimony, there is no evidence in the record to establish that the defendant had incestuous relations with her. That is, there is no other evidence in this record "which, taken by itself, leads to the inference, not only that a crime has

been committed, but also that the defendant is implicated in it." Boulton v. State, supra; State v. Fowler, supra. The law is also settled that evidence which merely casts a suspicion on the accused or only shows he had an opportunity to commit the crime is legally insufficient to corroborate the testimony of the accomplice. Boulton v. State, supra.

The judgment of the trial court is reversed and this case is remanded thereto for a new trial.

WALKER, P. J., concurs.

GALBREATH, J., concurs but would dismiss.