# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 26, 2002 Session

## STATE OF TENNESSEE v. ROBERT L. TROCSCH

**Direct Appeal from the Criminal Court for Roane County**
**No. 12298-B     E. Eugene Eblen, Judge**

---

**No. E2002-00359-CCA-R3-CD**
**April 3, 2003**

---

The appellant, Robert L. Trocsch, was convicted in the Roane County Criminal Court of one count of burglary and two counts of theft. He received a total effective sentence of eight years incarceration in the Tennessee Department of Correction. On appeal, the appellant contests the sufficiency of the evidence supporting his convictions and alleges that the trial court improperly performed its function as thirteenth juror. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH, J., joined.

Spence R. Bruner, Kingston, Tennessee, for the appellant, Robert L. Trocsch.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; J. Scott McCluen, District Attorney General; and Roger Delp, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The appellant was charged in a three count indictment with one count of burglary and two counts of theft. At trial, the State read into evidence the preliminary hearing testimony of Ed Louis Hackler.[1] Hackler testified that he was a resident of Rockwood in Roane County and that he owned a building in the Black Hollow community which was formerly the House of Prayer Church. At the time of the offenses, the building was being used as a storage facility for Hackler and his grandson, Ronald Edward Duncan. Hackler noted that the building had been "broken into" on two previous occasions.

---

[1] The record indicates that Hackler was deceased at the time of trial.

Hackler stated that on April 22, 1999, he noticed that one of the windows in the building appeared to have been "prized open" and that several items had been stolen from the building. The window in question had been boarded up as a result of previous damage. Upon discovery of the thefts, Hackler notified the Rockwood police.

Hackler testified that one small air conditioner, one large air conditioner, a water cooler, a china cabinet, a glass-topped end table, and boxes of "whatnots," all of which belonged to him, had been taken from the building. Heckler estimated that the value of his missing property was approximately $1,400 to $1,600. Additionally, Duncan's headboard and room divider had been stolen.

Later, Hackler's daughter spotted Duncan's headboard laying beside the railroad tracks. Located nearby was a mobile home in which Gary Thomas Northern, Jr., and his then girlfriend, Mary Helen Morgan, lived. According to Hackler, the headboard was found "right in front of the trailer." Hackler called the police and identified the headboard as one of the items stolen from the building. The police, Hackler, and Duncan then went to the mobile home. Morgan was at the mobile home when they arrived. Some of the stolen items were in or around the mobile home, being priced for inclusion in a yard sale. While the police were there, Northern and the appellant arrived at the residence.

The State next called Northern as a witness. Northern asserted that, at the time of the offenses, he did not own a vehicle and he was unemployed. However, the appellant owned a small truck. Northern testified that after 5:00 p.m. on April 21 or 22, 1999, the appellant "[c]ome down to the house, asked me if I wanted to go make some money." The two men began "riding around" on back roads in the appellant's truck. They were looking for "junk." The men came upon a "run down" house in Black Hollow. The appellant and Northern walked around the building and Northern got back into the appellant's truck because he did not see anything of interest. A few minutes later, the appellant came around the building and informed Northern that he had found an open window. Northern "said I wasn't going to mess with it. I wasn't going in." The appellant told Northern that he would go inside the building and hand items to Northern through a window. After some hesitation, Northern agreed. Northern explained that the windows in the building were located approximately four feet off of the ground. Among the items taken were two air conditioners, a glass-topped end table, a headboard, and a box of "knick-knacks, whatnots." The two men then went back to Northern's residence and unloaded the stolen items. Northern reported that they stripped the large air conditioner of usable parts and disposed of the rest of the apparatus. Subsequently, Northern threw the headboard out of the mobile home "on a notion to get everything out of my house." The headboard slid down the hill behind the home and came to rest near the railroad tracks.

Northern related that the police, Hackler, and Duncan were at his residence on May 9, 1999, when he arrived home in the company of the appellant. The appellant and Northern were arrested and were placed in the same cell. The appellant told Northern to "say it was all [Northern's] idea and all that, so he wouldn't have to go back to jail and do more time." Nevertheless, Northern

subsequently gave a statement implicating himself and the appellant in the crimes. Northern averred that he was testifying truthfully.

Duncan testified that approximately $1,200 worth of property belonging to him and his wife was stolen from the storage building in Black Hollow. Duncan explained that his mother lived in close proximity to Northern. On May 9, 1999, while he was mowing his mother's property, he noticed his missing headboard laying by the railroad tracks, approximately fifteen feet from Northern's mobile home. Duncan reported his discovery to the police and, together with Hackler, they went to Northern's residence to attempt to identify and retrieve the stolen property. Morgan was at the mobile home when the group arrived. A short time later, after identifying several stolen items at the residence, Duncan observed Northern arrive at the residence in the company of the appellant. The appellant was driving a small truck.

Duncan testified that he had visited the storage building approximately one week before the burglary and, at that time, there were no windows broken out of the building. However, subsequent to the burglary, two windows in the building were broken. Duncan observed that the windows of the storage building were located approximately four or five feet off of the ground and, after the burglary, he noticed that a table had been pushed underneath one of the broken windows on the inside of the building.

George Michael Hooks was the Assistant Chief of Police for the City of Rockwood at the time of the offenses. On April 22, 1999, Hackler reported a burglary at the Black Hollow storage building. Hooks noted that there were windows on both the left and right sides of the storage building. On the left side, the window had been broken. On the right side, the window's frame was still intact, but there was no glass in the frame. Hooks observed wood laying nearby which could have been used to board up the window. Inside the building, Hooks discovered a small table located underneath the broken window. Hooks surmised that the stolen items would have easily moved through the window. Hooks stated that finding fingerprints would have been unlikely given the condition of the materials in and around the building. Moreover, because the storage building had a gravel parking lot, Hooks opined that obtaining a comparable tire imprint would have been impossible.

Subsequently, on May 9, 1999, Hooks was informed that the headboard stolen from Duncan had been discovered near Northern's residence. As a consequence of the discovery of the headboard, Hooks, Hackler, and Duncan went to Northern's mobile home. Northern was not at home when they arrived and Hooks saw only one "passenger type car" at the property. Morgan granted Hooks permission to "search freely," and Hooks discovered at the residence several of the items stolen from the storage building. Hooks testified without objection that Morgan indicated that some of the items around the residence were brought there by Northern and the appellant.

Hooks arrested Northern and the appellant for the burglary and thefts. The appellant made a written statement in which he related that Northern had contacted him and asked for his help hauling items to a "dump." Specifically, the appellant's statement provides:

About 3 or four weeks ago [Northern] paged me. I called him back and he said that he would give me the gas money [i]f I would come to Rockwood and ha[u]l some stuff from a dump. I came to Rockwood and picked him up at his trailer and took him to a place that had brush some garbage and a bunch of boxes an[d] stuff pil[ed] up. I asked him was this stuff stolen he said no. When we got there he called out a[] name (David) and I he[a]rd brush but saw no one. We loaded up some boxes an[d] something heav[y] and I told him this didn't look right and I wasn't ha[u]ling nothing else. I took him home and told him the keep his money an[d] left. Then a few weeks or a week ago he w[a]nted me to ha[u]l off some junk from his place an[d] I did.

The appellant further suggested to Hooks that the "dump" was located close to Hackler's storage building. The appellant also told Hooks, "[Y]ou didn't find my tire tracks at the church."

The appellant chose not to put on any proof at trial. Based upon the foregoing, the jury convicted the appellant of one count of burglary of the building, one count of theft of property more than $1,000 but less than $10,000 from Hackler, and one count of theft of property more than $1,000 but less than $10,000 from Duncan, Class D felonies. At the sentencing hearing, the trial court sentenced the appellant as a Range III persistent offender to eight years incarceration on each offense, to be served concurrently. The appellant timely appealed, questioning the sufficiency of the evidence supporting his convictions and challenging the trial court's failure to act as thirteenth juror.

## II. Analysis

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The appellant essentially argues that there is insufficient evidence to support his conviction because the testimony of his accomplice, Northern, was not corroborated during trial. "An accomplice is defined as a person who knowingly, voluntarily, and with common intent with the principal offers to unite in the commission of a crime." State v. McKnight, 900 S.W.2d 36, 47 (Tenn. Crim. App. 1994). Because Northern was arrested and indicted for the same offenses as the

appellant, we conclude that Northern is an accomplice as a matter of law. <u>See</u> <u>State v. Boxley</u>, 76 S.W.3d 381, 386 (Tenn. Crim. App. 2001).

Generally, "a defendant cannot be convicted upon the uncorroborated testimony of [an] accomplice[]." <u>McKnight</u>, 900 S.W.2d at 47. In other words,

> there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity.

<u>Henley v. State</u>, 489 S.W.2d 53, 56 (Tenn. Crim. App. 1972). Moreover, "[t]he corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration." <u>State v. Heflin</u>, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999). Additionally, such corroborative evidence may be direct or circumstantial. <u>See</u> <u>State v. Spadafina</u>, 952 S.W.2d 444, 450 (Tenn. Crim. App. 1996).

As corroborative evidence, we note that the appellant admitted that he was in Rockwood with Northern near the time of the offenses and also admitted to "ha[u]ling" boxes and "something heav[y]" with Northern in an area near the storage building. Additionally, Hooks testified without objection that when he spoke with Morgan at Northern's residence, she "voluntarily . . . had indicated that some items by Mr. Trocsch and Mr. Northern had been brought there." Many of the items at Northern's residence were the items stolen from the storage building. Moreover, Hooks stated that at the time of the offenses, "I knew Mr. Northern not to have a driver's license. And no, at no time did I know him driving in the City of Rockwood." Hooks also explained that the setup of the storage building indicated that the stolen items were removed through the window that had a table placed underneath it, further corroborating Northern's version of events. While this proof is slight and circumstantial and would not be enough, standing alone, to convict the appellant, we conclude that this proof does sufficiently corroborate the testimony of Northern. Accordingly, we conclude that there was sufficient evidence adduced to support the appellant's convictions.

The appellant also argues that the verdict was contrary to the weight of the evidence and the trial court, acting as thirteenth juror, should have overturned the verdicts. Specifically, the appellant contends that "[i]n the instant case the Court did not review the evidence in light of Rule 33(f) and this failure allows the appellate court to review the evidence as thirteenth juror." Initially, we note that on appeal the State has not addressed this issue.

Tennessee Rule of Criminal Procedure 33(f) provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." When a trial court makes a determination following Rule 33(f), the court is acting as thirteenth juror. <u>See</u> <u>State v. Gillon</u>, 15 S.W.3d 492, 500 (Tenn. Crim. App. 1997). Our supreme court has explained that "when the trial judge simply overrules a motion for new trial, an appellate

court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict." State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995).

In the instant case, the trial court simply overruled the appellant's motion for new trial without making any comments regarding a dissatisfaction with the weight of the evidence. Thus, this court presumes that the trial court acted as thirteenth juror and approved the verdicts of the jury. See State v. Moats, 906 S.W.2d 431, 434 (Tenn. 1995). We have previously noted that

> [t]his Court is not in the best position to review the weight and credibility of the witnesses' testimony, and, for that reason, a new trial will only be granted if the trial judge expresses dissatisfaction or disagreement with the weight of the evidence or the jury's verdict, or the record indicates that the trial court misunderstood its role as thirteenth juror.

State v. James Charles Cavaye, No. M2001-02154-CCA-R3-CD, 2002 WL 31769092, at *6 (Tenn. Crim. App. at Nashville, Dec. 11, 2002). The appellant is not entitled to relief on this issue.

### III. Conclusion

Finding no error, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-6-