# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## FEBRUARY SESSION, 1997

FILED

December 1, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9603-CC-00104** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **MCMINN COUNTY** |
| **VS.** | ) | |
| | ) | **HON. R. STEVEN BEBB** |
| **RAYMOND GRAY,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Aggravated Sexual** |
| | ) | **Battery; Rape of a Child)** |

FOR THE APPELLANT:

THOMAS E. KIMBALL
110 ½ Washington Avenue, N.E.
Athens, TN 37303

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ROBIN L. HARRIS
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

JERRY N. ESTES
District Attorney General

SANDRA DONAGHY
Assistant District Attorney
P. O. Box 647
Athens, TN 37303

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

A McMinn County Criminal Court jury found Appellant Raymond Gray guilty of aggravated sexual battery and rape of a child. Appellant was sentenced as a Range one standard offender to ten years for the aggravated sexual battery conviction and to eighteen years for the rape conviction. In this appeal, Appellant presents the following issues:

(1) whether the trial court erred in refusing to sever the two counts of the indictment;
(2) whether the evidence presented was sufficient to support the verdict of the jury beyond a reasonable doubt;
(3) whether the trial court erred in prohibiting the defense from calling witness Tommy Buckner; and
(4) whether the sentence imposed is excessive.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

As accredited by the jury's verdict, the proof shows that on July 24, 1993 Appellant and Imogene Stansberry sexually assaulted Ms. Stansberry's niece, N.B.[1], age twelve. The victim testified that she was sitting in the living room while Appellant and Ms. Stansberry were watching "dirty movies." Appellant and Ms. Stansberry forced N.B. to watch the movie with them. After the movie ended, N.B. testified that "they just started, they just, Imogene told me to take off my clothes and I said no, and so she took off my clothes for me, and then she just started

---

[1]Pursuant to the policy of this Court, the minor victim of sexual abuse in this case will be referred to by her initials rather than her full name.

touching me and I told her to stop and she wouldn't." While this was occurring, the Appellant held N.B.'s arm to keep her from escaping. The Appellant then began to fondle the victim. "[He] used his hands and touched my breasts and in between my leg, and then he used his tongue and touched my breasts and in between my legs." Ms. Stansberry held the victim down during the assault by Appellant. After the assault, the victim was too frightened to tell anyone what had happened, because Ms. Stansberry and the Appellant threatened to hurt her family if she told.

On July 31, 1993, Ms. Stansberry telephoned the victim and told her to come over or else she would be in trouble. The victim went to Appellant and Ms. Stansberry's house because she was afraid Ms. Stansberry would hurt her parents. The victim testified that while she was in their residence, Ms. Stansberry held her down and Appellant again licked the victim's breasts and in between her legs. According to the victim, during this assault, the Appellant and Ms. Stansberry were again watching dirty movies about gay men and women.

Ms. Stansberry testified that the victim asked her about sex and how it feels for "a man to be up inside you." According to Ms. Stansberry, she, the Appellant, and N.B. played strip poker and "Fantasy". During the Fantasy game, both N.B. and Ms. Stansberry had oral sex with Appellant. Ms. Stansberry also testified to touching N.B.'s breasts and admitted that she and Appellant told the victim not to tell anyone and threatened that "there would be no place that she could ever run and hide."

Ms. Stansberry also testified to a second incident in July, during which she the Appellant and N.B. watched a movie in which a "bunch of men and women [were] having sex, and then it's women having sex together." Ms. Stansberry testified that on that occasion she touched N.B.'s breasts and that Appellant "more or less run his tongue up and down the child's vagina."

## II. SEVERANCE OF OFFENSES

Appellant argues that the trial court erred in denying his motion for a severance of the offenses involved in this case. Count one of the indictment charged Appellant with aggravated sexual battery of N.B. on July 31, 1993; Count two charged aggravated sexual battery on July 24, 1993: and Count three charged rape of a child, N.B., on July 31, 1993.[2]

Tennessee Rules of Criminal Procedure Rules 14(b)(1) provides:

(b) Severance of offenses

> (1) If two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b), the defendant shall have a right to severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would have been admissible upon the trial of the others.

In State v. Hallock, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993) this Court held that "common scheme or plan" under Rule 14(b)(1) can be broken into three subcategories: 1) modis operandi or distinctive signature; 2) continuing plan or conspiracy; or 3) same transaction or occurrence. In this case, we find evidence of a distinctive signature. In both incidents, Appellant and Ms.

_____

[2]According to the State's brief, the trial judge merged counts two and three of the indictment.

Stansberry forced N.B. to watch pornographic movies and them alternated holding the child down and sexually assaulting her. After each assault, Appellant and Ms. Stansberry repeated the same threat to N.B., threatening to harm her family if she revealed their crime.

As to the second prong of 14(b)(1), in this record, Appellant chose not to put on proof of his defense at the severance hearing . Therefore, upon Appellant's not guilty plea, the State was required to prove both the identity and the intent of Appellant as the perpetrator. This burden upon the State clearly would make proof of either crime relevant in the State's case-in-chief upon the trial of the other. Therefore, the second prong of Rule 14(b)(1) was met, and the severance of offenses was not mandatory. There is no proof of abuse of discretion in the trial court's refusal to grant a severance, therefore this issue is without merit.

### III. SUFFICIENCY OF THE EVIDENCE

Appellant alleges that the State's proof at trial was insufficient to support the jury's verdict. When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the proof adduced at the trial is sufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13 (e). This Court does not reweigh or re-evaluate the evidence and we are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Appellant argues that Ms. Stansberry's evidence is tainted by her "incredibly desperate" plea agreement. However, the weight and credibility of a witness' testimony are matters entrusted exclusively to the jury as triers of fact. State v. Wright, 836 S.W.2d 130, 134 (Tenn. Crim. App. 1992); State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Ms. Stansberry was throughly cross-examined as to the nature of her plea agreement with the State. The jury was informed as to any effect this plea agreement might have had on her testimony. Any weight the jury may have placed upon her testimony was entirely within the province of their role as trier of fact.

Appellant further argues that he cannot be convicted on the basis of N.B.'s testimony, alleging that she was an accomplice and that a conviction cannot stand on the basis of uncorroborated accomplice testimony. Appellant is correct in his contention that a child who is incapable of consent can still be an accomplice. See Henley v. State, 489 S.W.2d 53 (Tenn. Crim. App. 1972); Boulton v. State, 214 Tenn. 94, 377 S.W.2d 936 (Tenn. 1964). However, the testimony accredited by the jury in this trial is that this victim did not participate voluntarily in the crime, therefore she could not have been an accomplice. Further, an accomplice is "a person who knowingly, voluntarily and with common intent with the principle offender unites with him in the commission of the crime." Wharton's Criminal Evidence (12th Ed.) § 448 at pg.229 The test of whether someone is an accomplice is whether that person could be indicted for the same offense as the principle. The precedent cited in Appellant's brief all involved crimes for which the victim could be found guilty if the victim performed the acts voluntarily - ie. incest, fellatio. Here, the victim could not be found guilty of raping

herself even if the jury had found that she participated voluntarily, therefore she could not be an accomplice in this crime. Accordingly, this issue is without merit.

## IV. DISALLOWANCE OF A WITNESS

Appellant argues that the trial court erred in granting the State's motion to disallow the testimony of defense witness T.B. Appellant claimed that T.B., the father of the victim, would have testified that he had caught N.B. in lies. However, Appellant failed to make a proffer of testimony regarding N.B.'s alleged lies. Therefore, this issue cannot be reviewed. *See* State v. Hutchinson, 898 S.W.2d 161, 172 (Tenn. 1994).

## V. PROPRIETY OF THE SENTENCE

Appellant contends that the trial court improperly imposed a sentence of eighteen years for the rape of a child and ten years for aggravated sexual battery. When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. T.C.A. §40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166,169 (Tenn. 1991).

The trial court found Appellant's lack of a prior record to be a mitigating factor, and found several enhancing factors. The court found that 1) this crime

was committed in such a way that the potential for bodily injury to the victim was great; 2) the defendant abused a position of trust; and 3) this crime involved exceptional cruelty. Because the trial court failed to set out which enhancement factor applied to which crime, we review Appellant's sentence *de novo*. State v. Ashby, 823 S.W.2d 166 (Tenn. 1991).

## A. LENGTH OF SENTENCE

### 1) Rape of a Child

Appellant challenges the trial court's finding that this crime was committed in a manner in which the potential for bodily injury was great. Appellant argues that this finding was not supported by the evidence and that the trial court found this factor based upon other crimes unrelated to any acts of the defendant.[3] However, the record supports the finding of this factor. According to the victim's testimony as accredited by the jury, while the Appellant performed the sexual acts upon the victim she was held down by Ms. Stansberry. The situation involved two adults holding down and engaging in sexual acts with a struggling child, a situation inherently rife with the danger of injury. In fact, Ms. Stansberry testified that at one point Appellant hurt N.B. while performing a sexual act on her.

Second Appellant challenges the trial court's finding that "the use of multiple actors to accomplish the crime of rape of a child is allowing the victim to be treated with exceptional cruelty during the commission of the

---

[3]The trial court stated: " I see this case in that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. I cannot imagine a situation in which two people are involved with the rape of a child in which the potential for bodily injury is not great. I mean I keep thinking of murdered children and dead children who cannot testify against their abusers, and so to me this is an enhancing or aggravating factor."

offense."Appellant contends that this finding is tantamount to finding that the youth of the victim and the presence of a co-defendant aggravated the crime of rape of a child. The enhancement factor of "exceptional cruelty" requires a finding of cruelty over and above that inherently attendant to the crime. State v. Embry, 915 S.W.2d 451 (Tenn. Crim. App. 1995). In this crime, the victim was subjected to the cruelty of having unwanted sex acts performed upon her while another adult watched, she was threatened into watching pornographic movies, and she and her family threatened if she reported the crime; certainly none of these undoubtedly cruel acts upon the victim are intrinsic to the crime of rape of a child.

Further, though the trial court did not so find, enhancement factor (7), dealing with the commission of the crime for pleasure or gratification clearly applies to the child rape conviction. Though this enhancement factor cannot apply to sexual battery, since it is intrinsic to that crime, this factor does apply to rape. State v. Adams, 864 S.W.2d 31 (Tenn. 1993); State v. Hoyt, 928 S.W.2d 935 (Tenn. Crim. App. 1995). Here, the evidence showed that Appellant and his girlfriend watched pornographic movies and then fondled and raped N.B. for their sexual pleasure.

**2) Aggravated Sexual Battery**

For the reasons stated above in the discussion of enhancement factors for the rape of a child conviction, enhancement factors involving the potential for bodily injury, abuse of a position of trust, and exceptional cruelty all apply to Appellant's aggravated battery conviction.

## B. CONSECUTIVE SENTENCING

Appellant also challenges the trial court's mandate that he serve his sentences consecutively. The trial judge found that consecutive sentences were proper under Tennessee Code Annotated § 40-35-115 (b)(5) on the basis that defendant was convicted of aggravated sexual battery and rape of a child. The trial court based the imposition of consecutive sentences upon the Appellant's relationship with the victim and the nature and scope of the sexual activity involved. While perhaps the relationship between Appellant and this victim was not the close familial relationship found in other cases where this factor has applied, Appellant was a close friend of the victim's father and was married to the victim's aunt. There was a familial relationship between Appellant and the victim. Further, the trial court's imposition of consecutive sentences based upon the nature of Appellant's acts was entirely appropriate considering the potential for injury to which Appellant subjected N.B. and the pain she experienced during the commission of his crime.

However, a finding that T.C.A.§ 40-35-115(b)(5) applies to Appellant's case does not end the inquiry into the validity of consecutive sentencing. State v. Woodcock, 922 S.W.2d 904 (Tenn. Crim. App. 1995). We further find that consecutive sentences are necessary to protect the public from the defendant's possible future criminal conduct and that the aggregate sentence is reasonably related to the severity of the despicable offenses involved in the instant case. T.C.A. § 40-35-115 Sentencing Commission Comments; State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995); State v. Jernigan, 929 S.W.2d 391(Tenn. Crim. App. 1996).

Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
THOMAS T. WOODALL, JUDGE