# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 24, 2012

## STATE OF TENNESSEE v. CHRISTOPHER BRYAN HANCOCK

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 09-CR-013      John F. Dugger, Jr., Judge**

---

**No. E2011-00111-CCA-R3-CD - Filed September 24, 2012**

---

A Hamblen County Criminal Court Jury convicted the appellant, Christopher Bryan Hancock, of especially aggravated kidnapping, aggravated burglary, and aggravated robbery, all based upon a theory of criminal responsibility. The trial court imposed a total effective sentence of fifteen years in the Tennessee Department of Correction. On appeal, the appellant challenges the sufficiency of the evidence supporting his convictions, the trial court's failure to instruct the jury as to the lesser-included offense of accessory after the fact, and the trial court's instruction regarding criminal responsibility. Upon review, we affirm the appellant's convictions of aggravated burglary and aggravated robbery, but we must reverse his conviction of especially aggravated kidnapping and remand for a new trial for the trial court to instruct the jury as mandated by our supreme court in State v. White, 362 S.W.3d 559, 580-81 (Tenn. 2012).

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed in Part, Reversed in Part; Case Remanded**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Jonathan A. Marion, Sneedville, Tennessee (on appeal), and Gerald Eidson, Rogersville, Tennessee (at trial), for the appellant, Christopher Bryan Hancock.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; C. Berkeley Bell, District Attorney General; and Kim Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual Background

The ninety-six-year-old victim, Selma Harville, testified at trial that between 7:00 and 7:45 p.m. on the evening of December 22, 2008, she heard a knock on the front door of her home at 603 Rosedale Avenue. She answered the door, and two men, later identified as Nathan Wilmoth and Jerome Collins, asked to use her telephone. When the victim let them in, Wilmoth took her by the arm, turned her around, and pushed her face-first to the floor. Wilmoth then straddled her back and periodically hit the back of her head with his fist. The victim said the blows were painful.

Collins tied the victim's feet, placed a knife at her throat, and threatened to kill her if she did not disclose the location of her purse. The victim revealed that the purse was in her bedroom. Collins went into the bedroom, ransacked the drawers, searched the room, and retrieved the purse. The victim begged, "Don't kill me, I'm a Christian." Wilmoth put tape around the victim's mouth. The men searched the living room and broke a ceramic figurine that the victim referred to as "God's hand." The men left through the back door.

Kathy Jackson, the victim's neighbor, testified that at 7:45 p.m., the victim called and told Jackson about the incident. Jackson called police and went to the victim's house to help. The victim's daughter, Judy Knowles, learned of the incident and also went to the victim's house.

Jackson and Knowles saw that the back of the victim's head, her right temple, and her right leg were bruised. Her glasses were bent so badly that they would not fit on her face. The victim had marks on her lower face where the tape had been. The tape was hanging around her throat, and some binding was around her feet. The victim's normally neat house was in disarray. In the living room, couch cushions were out of place, pieces of the figurine were on the floor, books were scattered, a roll of tape was on a chair beside the television, and a meat cleaver from the victim's kitchen was on a couch cushion. The victim's bedroom was ransacked; drawers were pulled open, items were strewn on the floor, the jewelry box was mostly empty, and the bed was rumpled. The victim's purse and several pieces of jewelry were missing. Knowles surmised that approximately $1100 of money and property had been taken.

Amber Bryant testified that earlier that day, Wilmoth and Collins were at her house.[1] The men left, and while they were gone, Randall Weaver, Tiffany Chance, and the appellant

---

[1] Byant pled guilty and received an effective eight-year sentence in exchange for tesifying.

arrived at Bryant's residence. Wilmoth and Collins returned and asked Weaver to check if a neighbor was still outside. Weaver complied and told them that no one was outside.

Wilmoth and Collins left and returned twenty to thirty minutes later. They came in breathless, carrying a purse and a Christmas present. They went into Bryant's bedroom and closed the door. Weaver, Chance, Bryant, and the appellant followed them into the bedroom. Wilmoth and Collins said that they had gone down the street to the house where a friend of Collins' grandmother lived. When the victim let them in to use the telephone, they pushed her to the floor, Wilmoth hit her, and Collins threatened her with a knife.

Bryant testified that Wilmoth and Collins searched the purse and divided the money they found. The appellant went through the purse, found some money they had missed, and gave the money to Wilmoth. Wilmoth and Collins gave the appellant two necklaces and a ring, which the appellant then handed to Bryant. Bryant believed that she was supposed to carry the jewelry for a little while then return it to the appellant. Bryant put loose change from the purse into an empty jug and placed the jug in a closet. Chance took some gloves that were in the purse.

Fearing police would soon be in the neighborhood to investigate the crime, Bryant told her guests that they could not stay at her house. The appellant volunteered to call his parents and let them stay at his house. The appellant and Collins went nearby to Collins' grandmother's house to use her telephone. The appellant, Wilmoth, Collins, and Bryant walked to a nearby Family Dollar store so they could be picked up by the appellant's father. As they walked, Wilmoth said that he wanted to throw the purse in the trash. However, the appellant said that the purse would be easily found in the trash and, at the appellant's suggestion, they threw the purse on the roof of an antique store they passed.

On cross-examination, Bryant acknowledged that she had previously given a statement saying that Wilmoth suggested they throw the purse on the roof. She conceded that her memory was probably better at the time she gave the statement.

Bryant said that when they arrived at the appellant's house, they went into the appellant's bedroom. Bryant returned the jewelry to the appellant, and he put it in a lockbox. Collins also gave the appellant some cash to store in the lockbox.

The following day, police brought Wilmoth, Collins, Bryant, and the appellant to the police station for questioning. The appellant waived his Miranda rights and agreed to give a statement. He said that he had been at Bryant's residence the night before around 7:00 p.m. and that he had called his parents to take him home. During the course of the investigation, Bryant showed police where some stolen items were at her house, namely a set of gloves, a

cellular telephone, and a jug containing loose change. From a lockbox at the appellant's residence, police retrieved some jewelry. On December 29, 2008, the appellant's parents gave police a plastic bag containing a pair of the appellant's rolled-up blue jeans. Police unrolled the jeans and found assorted papers, identification cards, and jewelry belonging to the victim. Police also found the victim's purse on the roof of the antique store.

The twenty-two-year-old appellant testified that he did not know about the robbery prior to it happening. He said that he and Wilmoth had been friends for six years. On December 22, 2008, Wilmoth came by the appellant's house. Wilmoth said that he was going to Bryant's house, and the appellant said that he would meet Wilmoth there later that day. The appellant arrived at Bryant's house around 7:00 p.m. and spent most of the time in the living room listening to his iPod. Wilmoth and Collins said they were going to a McDonald's restaurant to borrow $200 from a girl and asked the appellant to go with them. The appellant refused because he did not want to walk in the cold.

When Wilmoth and Collins returned, they went into Bryant's bedroom. The appellant, Bryant, Chance, and Weaver followed them. Wilmoth and Collins "were screaming that they got money" and were dividing money from the purse and jewelry. The appellant denied touching the money or jewelry, going through the purse, or handing jewelry to Bryant. He also denied knowing that Wilmoth and Collins robbed an elderly woman who lived down the street. The appellant said that he did not want to know where they got the purse, fearing he would get in trouble.

The appellant said that he decided to leave Bryant's house because he was bored and that he called his father to pick him up. Wilmoth asked to spend the night with him, and the appellant agreed; Collins and Bryant joined them. The appellant denied knowing that Wilmoth and Collins threw the purse on the roof of a store. When they arrived at the appellant's house, Collins pulled some jewelry from his pocket, which he claimed was a Christmas present for his girlfriend. Collins asked the appellant to put the jewelry in his lockbox so Wilmoth would not steal it. The appellant said that he did not disclose much information when he was interviewed by police because he feared talking without a lawyer present.

Based upon the foregoing evidence, the jury found the appellant guilty of criminal responsibility for especially aggravated kidnapping, criminal responsibility for aggravated burglary, and criminal responsibility for aggravated robbery. The trial court imposed a total effective sentence of fifteen years. On appeal, the appellant challenges the sufficiency of the evidence supporting his convictions, the trial court's failure to instruct the jury as to the lesser-included offense of accessory after the fact, and the trial court's instruction regarding criminal responsibility.

-4-

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

### 1. Aggravated Burglary and Aggravated Robbery

First, we will address the appellant's convictions of aggravated burglary and aggravated robbery. Aggravated robbery is defined as robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1). Robbery is defined as "the intentional or knowing theft of poperty from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A theft of property occurs when someone, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103. An aggravated burglary occurs when a person, without the effective consent of the property owner, enters a habitation, such as a person's residence, and commits or attempts to commit a felony, theft, or assault. See Tenn. Code Ann. §§ 39-14-401(1)(A), -402(a)(1), and -403(a).

In the instant case, Wilmoth and Collins used a ruse to gain entry into the victim's home. Wilmoth pushed the victim to the floor, straddled her back, and repeatedly hit her head. Collins put a knife to the victim's throat and threatened to kill her if she did not reveal the location of her purse. The men ransacked the victim's house and took her purse, jewelry, and a Christmas present. The men taped her mouth and bound her feet before they left the residence. These actions constitute aggravated robbery and aggravated burglary.

The appellant was charged with criminal responsibility for the actions of Wilmoth and Collins. In Tennessee, "criminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). A defendant convicted under a criminal responsibility theory "is guilty in the same degree as the principal who committed the crime" and "is considered to be a principal offender of the crime for the purposes of due process and our criminal law." Id. at 171. The appellant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)).

Generally, "[a] person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a). Tennessee Code Annotated section 39-11-402(2) provides that a person is criminally responsible for the actions of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." In order to be found criminally responsible, "[n]o particular act need be shown, and the [appellant] need not have taken a physical part in the crime." State v. Caldwell, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002). This court has stated that "[p]resence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which one's participation in the crime may be inferred." State v. Jones, 15 S.W.3d 880, 890 (Tenn. Crim. App. 1999); see also State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998); State v. McBee, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982).

The appellant's sufficiency argument is that "he was in the wrong place at the wrong time," that he was not at the actual scene of the crime, that he was not involved in the plans or discussions, that he was not a lookout, and that he was not identified by the victim as a perpetrator. In other words, the appellant contends that there was no direct evidence linking him to the crime.

The evidence in the light most favorable to the State reveals that the appellant and Wilmoth had been friends for six years and that Wilmoth was at the appellant's house earlier on the day of the crime. Wilmoth told the appellant that he would be at Bryant's residence later in the day, and the appellant went to Bryant's residence to meet Wilmoth. The appellant was at Bryant's residence when Wilmoth and Collins asked Weaver to step outside to make sure no one was outside when they left. When Wilmoth and Collins returned twenty to thirty minutes later, they were out of breath and in possession of a purse and a Christmas present.

Wilmoth and Collins told the appellant that they had robbed an old lady. The appellant found money in the purse that Wilmoth and Collins had overlooked. The appellant allowed Wilmoth, Collins, and Bryant to hide from police at his house. The appellant also told Wilmoth and Collins that they should not put the victim's purse in the trash because it would be found too easily. The appellant concealed money and jewelry taken during the robbery in a lockbox in his bedroom. Additionally, when the appellant's parents gave police a pair of the appellant's blue jeans, police found more stolen jewelry wrapped up in the jeans. We conclude that this evidence is sufficient for a jury to find that the appellant was criminally responsible for the actions of Wilmoth and Collins.

## 2. Corroboration of Accomplice Testimony

The appellant further complains that his convictions are based "solely on the testimony of co-defendant and alleged accomplice, Amber Bryant, to connect him to the actions of Wilmoth and Collins." The appellant correctly notes that "a defendant cannot be convicted upon the uncorroborated testimony of [an] accomplice[]." State v. McKnight, 900 S.W.2d 36, 47 (Tenn. Crim. App. 1994). In other words,

> there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity.

Henley v. State, 489 S.W.2d 53, 56 (Tenn. Crim. App. 1972). "'The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.'" State v. Heflin, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999) (quoting State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994)). Additionally, such corroborative evidence may be direct or circumstantial. See State v. Spadafina, 952 S.W.2d 444, 450 (Tenn. Crim. App. 1996).

Our review of the record reveals that police found the victim's purse on the roof of a store, consistent with Bryant's testimony that Wilmoth, Collins, and the appellant threw the purse on the roof. Bryant testified that the appellant stored money and jewelry in his lockbox, and police confirmed that the victim's jewelry was found in the appellant's lockbox. More of the victim's jewelry was found concealed in a pair of the appellant's blue jeans, further connecting the appellant with the crimes. Therefore, we conclude that Bryant's testimony was sufficiently corroborated.

3. Especially Aggravated Kidnapping

As the final issue, we will examine the appellant's conviction of especially aggravated kidnapping. Tennessee Code Annotated section 39-13-305(a)(1) defines especially aggravated kidnapping as false imprisonment "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." False imprisonment is defined as the knowing removal or confinement of "another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302.

Our case law reveals a long-standing concern regarding the legitimacy of a kidnapping conviction when the act(s) establishing the offense occurred during an accompanying felony. In State v. Anthony, 817 S.W.2d 299, 306 (Tenn. 1991), our supreme court, citing due process concerns, held that before a separate kidnapping conviction may be sustained, there must be a determination of

> whether the confinement, movement, or detention [was] essentially incidental to the accompanying felony and [was] not, therefore, sufficient to support a separate conviction for kidnapping, or whether it [was] significant enough, in and of itself, to warrant independent prosecution and [was], therefore, sufficient to support such conviction.

Later, in State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997), our supreme court modified the Anthony court's "essentially incidental" analysis and established a two prong test for determining whether a separate conviction for kidnapping violates due process. The first step concerned a determination of whether the movement or confinement was beyond that necessary to commit the accompanying felony. Id. If so, the second step concerned ascertaining whether the additional movement or confinement (1) prevented the victim from summoning help; (2) lessened the appellant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id.

Recently, in State v. White, 362 S.W.3d 559 (Tenn. 2012), our supreme court expressly overruled Anthony and its progeny, holding that "[t]he separate due process test articulated first in Anthony, and subsequently refined in Dixon . . . , is . . . no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony." Id. at 578. Instead, the court held that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question

-8-

for the jury properly instructed under the law," thereby concluding that a defendant's constitutional concerns are protected by appellate review of the sufficiency of the convicting evidence. Id. at 577-78. Therefore, our supreme court cautioned that "trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." Id. To effectuate this end, our supreme court devised an instruction to be given by trial court's:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> • the nature and duration of the victim's removal or confinement by the defendant;
>
> • whether the removal or confinement occurred during the commission of the separate offense;
>
> • whether the interference with the victim's liberty was inherent in the nature of the separate offense;
>
> • whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
>
> • whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
>
> • whether the removal or confinement created a significant danger or increased the

> victim's risk of harm independent of that posed
> by the separate offense.

Id. at 580-81.

In the instant case, the instruction given by the trial court was virtually the same as that given to the jury in White, which our supreme court found insufficient to fully inform the jury of the elements of kidnapping. See State v. Michael L. Powell, No. E2011-00155-CCA-R3-CD, 2012 WL 1655279, at *9 (Tenn. Crim. App. at Knoxville, May 10, 2012). Therefore, we are constrained to reverse the appellant's conviction for especially aggravated kidnapping and remand for a new trial on that charge, with the trial court instructing the jury according to the dictates of White. See White, at 580-81.

## B. Jury Instructions

The appellant's remaining complaints concern the jury instructions given by the trial court. A defendant has a "constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Accordingly, trial courts "should give a requested instruction if it is supported by the evidence, embodies a party's theory, and is a correct statement of the law." State v. Phipps, 883 S.W.2d 138, 150 n. 20 (Tenn. Crim. App. 1994). Moreover, we have previously noted that "[w]e must review the entire [jury] charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). A charge resulting in prejudicial error is one that fails to fairly submit the legal issues to the jury or misleads the jury about the applicable law. State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

## 1. Accessory After the Fact

The appellant argues that the trial court erred by failing to instruct the jury on accessory after the fact as a lesser-included offense. A trial court has a duty to instruct the jury on the charged offense(s) and any lesser-included offenses. See Tenn. Code Ann. § 40-18-110; State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999). "In applying the lesser-included offense doctrine, three questions arise: (1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless." State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). In Burns, our supreme court outlined the test for determining when an offense may be considered a lesser-included offense of an indicted offense. 6 S.W.3d at 466-67.

Tennessee Code Annotated section 39-11-411(a) provides:

(a) A person is an accessory after the fact who, after the commission of a felony, with knowledge or reasonable ground to believe that the offender has committed the felony, and with the intent to hinder the arrest, trial, conviction or punishment of the offender:

(1) Harbors or conceals the offender;

(2) Provides or aids in providing the offender with any means of avoiding arrest, trial, conviction or punishment; or

(3) Warns the offender of impending apprehension or discovery.

This court has previously examined this issue and has concluded "that accessory after the fact is a separate and distinct offense, rather than a lesser-included offense of a felony committed by the perpetrator of a crime." State v. Timothy Wayne Holland, No. M2001-03129-CCA-R3-CD, 2002 WL 31007428, at *7 (Tenn. Crim. App. at Nashville, Sept. 4, 2002) (citing State v. Hodgkinson, 778 S.W.2d 54, 63 (Tenn. Crim. App. 1989), State v. Hoosier, 631 S.W.2d 474, 476 (Tenn. Crim. App. 1982)). Accordingly, because the appellant was not charged as an accessory after the fact, the trial court did not err in refusing to instruct the jury on that offense.

## 2. Criminal Responsibility

Finally, the appellant makes two complaints regarding the trial court's instruction regarding criminal responsibility. First, the appellant claims that "the instruction was presented in a very vague and broad manner, failing to concisely define the terms solicit, direct, aid or attempt to aid." Second, the appellant, quoting State v. Jones, 15 S.W.3d 880, 890 (Tenn. Crim. App. 1999), maintains that the trial court should have instructed the jury that "'[m]ere presence during the commission of the crime is not enough to convict'" a person under a theory of criminal responsibility.

Initially, we note that the record does not reflect that the appellant objected to the criminal responsibility instruction given by the trial court or argued for the inclusion of definitions or the provision regarding a person's "mere presence during the commission of a crime." However, he did raise the issues in his motion for new trial. "Rule 30(b) of the Tennessee Rules of Criminal Procedure provides that failure to make objection to the content of an instruction 'shall not prejudice the right of a party to assign the basis of the objection as error in support of a motion for a new trial.'" State v. Lynn, 924 S.W.2d 892, 898-99 (Tenn. 1996).

The trial court instructed the jury regarding criminal responsibility as follows:

> The defendant is criminally responsible as a party to the offense or offenses . . . if the offenses were committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible or by both. . . . The defendant is criminally responsible for an offense committed by the conduct of another if at the acting with intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids or attempts to aid another person to commit the offense.
>
> A defendant who is criminally responsible for an offense may be found guilty not only of that offense but also for any other offense or offenses committed by another. If you find beyond a reasonable doubt that the other offense or offenses committed were natural and probable consequences of the original offense to which the defendant is found criminally responsible and that the elements of the other offense or offenses that accompany the original offense have [been] proven beyond a reasonable doubt.
>
> In deciding the criminal responsibility of the defendant, the jury may also take into consideration any evidence offered that the defendant attempted to depart or withdraw from any of the offenses that followed from the original offense.
>
> Before you find the defendant guilty of being criminally responsible for said offense committed by the conduct of another, you must find that all the essential elements of said offenses have been proven by the state beyond a reasonable doubt.

This instruction comports with the language in Tennessee Pattern Jury Instruction 3.01, which this court has previously approved as "a correct statement of the law." State v. Mario Green, No. W2006-01383-CCA-R3-CD, 2008 WL 2331020, at *7 (Tenn. Crim. App. at Jackson, June 5, 2008); see also State v. Grover Donnell Cowart, No. 03C01-9512-CR-00402, 1999 WL 5174, at *21-22 (Tenn. Crim. App. at Knoxville, Jan. 8, 1999). Further, we note that a trial court is not required to define or explain words or terms in common use which are understood by persons of ordinary intelligence. See State v.

Summers, 692 S.W.2d 439, 445 (Tenn. Crim. App. 1985); see also State v. Terrance D. Nichols, No. W2003-01043-CCA-R3-CD, 2005 WL 551957, at *3 (Tenn. Crim. App. at Jackson, Mar. 8, 2005). Therefore, we conclude that the instruction given was not vague or overbroad. Moreover, because the charge was a correct statement of the law, we can discern no error by the trial court's failure to instruct the jury that "'[m]ere presence during the commission of the crime is not enough to convict'" a person under a theory of criminal responsibility.

### III.  Conclusion

In sum, we conclude that the evidence is sufficient to support the appellant's convictions for aggravated robbery and aggravated burglary and that the trial court did not err in instructing the jury on criminal responsibility. Accordingly, we affirm the judgments of the trial court concerning the aggravated robbery and aggravated burglary convictions. However, in light of State v. White, 362 S.W.3d 559 (Tenn. 2012), we must reverse the appellant's especially aggravated kidnapping conviction and remand for further proceedings consistent with this opinion.

 

_____
NORMA MCGEE OGLE, JUDGE